**Fill in this information to identify the case:**

Debtor 1 Timothy D. Ehn

Debtor 2 ______
(Spouse, if filing)

United States Bankruptcy Court for the: Eastern District of Kentucky

Case number 26-20942

Official Form 410

# Proof of Claim

04/25

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

1. **Who is the current creditor?**

Central Bank & Trust Co.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor ______

2. **Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? ______

3. **Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|---|
| Name | c/o Martin B. Tucker, Dinsmore & Shohl LLP | c/o Becky Mullins |
| Number Street | 100 West Main Street, Suite 900 | 300 West Vine Street |
| City / State / ZIP Code | Lexington KY 40507 | Lexington KY 40507 |
| Contact phone | (859) 425-1000 | ______ |
| Contact email | martin.tucker@dinsmore.com | ______ |

Uniform claim identifier (if you use one):
__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

4. **Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) ______ Filed on ______ MM / DD / YYYY

5. **Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? ______

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 2 8 6 1

**7. How much is the claim?**

$ 585,404.88. **Does this amount include interest or other charges?**

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Mortgage Loan and Civil Judgment; See attached

**9. Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: ______

**Basis for perfection:** See Attached

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property**: $ Unknown

**Amount of the claim that is secured:** $ 585,404.88

**Amount of the claim that is unsecured:** $ Unknown (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ 585,404.88

**Annual Interest Rate** (when case was filed) 3.625 %

☑ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $______

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: ______

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | **Amount entitled to priority** |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $____________________ |
| ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $____________________ |
| ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $____________________ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $____________________ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $____________________ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $____________________ |

* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 11/18/2026
MM / DD / YYYY

/s/ Martin B. Tucker
Signature

**Print the name of the person who is completing and signing this claim:**

Name: Martin (First name) B. (Middle name) Tucker, Esq. (Last name)

Title: Attorney for Creditor, Central Bank & Trust Co.

Company: Dinsmore & Shohl LLP
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 100 West Main Street, Suite 900 (Number Street)
Lexington (City) KY (State) 40507 (ZIP Code)

Contact phone: (859) 425-1000 Email: martin.tucker@dinsmore.com

# Mortgage Proof of Claim Attachment

(12/23)

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.**

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case number: | 26-20942 | Principal balance: | $505,472.33 | Principal due: | $505,472.33 | Principal & interest: | NA |
| Debtor 1: | Timothy D. Ehn | Interest due: | $22,140.74 | Interest due: | $22,140.74 | Monthly escrow: | NA |
| Debtor 2: | | Fees, costs due: | $53,727.13 | Prepetition fees due: | $53,727.13 | Private mortgage insurance: | NA |
| Last 4 digits to identify: | 2 8 6 1 | Escrow deficiency for funds advanced: | $4,064.68 | Escrow deficiency for funds advanced: | $4,064.68 | Total monthly payment: | NA |
| Creditor: | Central Bank & Trust Co. | Less total funds on hand: | – $0.00 | Projected escrow shortage: | $0.00 | | |
| Servicer: | Same as above | Total debt: | $585,404.88 | Less funds on hand: | – | | |
| Fixed accrual/daily simple interest/other: | Daily simple interest | | | Total prepetition arrearage: | $585,404.88 | | |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| See attached loan transaction history | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |

CENTRAL BANK & TRUST CO
CUSTOMER LOAN HISTORY

PAGE 0001

NOTE NBR [redacted]2861
SHORT NAME EHN TIMOTHY D

REQUEST DATE
9-17-2026

TIMOTHY D EHN
AND TANYA THOMPSON-EHN
1182 CHESAPEAKE TRL
UNION KY 41091-8803

PRIMARY COLLATERAL
1182 CHESAPEAKE TRAIL

*--------CURRENT BALANCE DATA---------*

| | |
|---|---|
| NOTE AMOUNT | 621,600.00 |
| PRINCIPAL BALANCE | 505,472.33 |
| INT BALANCE | 22,191.64 |
| PAYOFF AMOUNT AS OF 9-17-26 | 533,969.01 |

*--------CURRENT INTEREST DATA--------*

| | |
|---|---|
| INTEREST RATE | 3.62500 |
| DAILY INT FACTOR | 50.898255 |
| INTEREST PAID YTD | .00 |

*---------------DATES-----------------*

| | |
|---|---|
| NOTE DATE | 11-04-16 |
| LAST RENEWED | 00-00-00 |
| NEXT MATURITY | 12-01-46 |
| LAST PAID INSTALLMENT | 07-01-25 |

*----------NEXT PAYMENT DATA----------*

| | |
|---|---|
| NEXT DUE DATE | 08-01-25 |
| NEXT PMT AMOUNT | 4,105.61 |
| TOTAL PAST DUE AMT | 60,378.99 |
| LATE FEES DUE | 1,984.36 |
| LOAN FEES DUE | 210.00 |

*------------------HISTORY: 00-00-00 THRU 00-00-00 -------------------------*

| POST DTE / DUE DATE / REC DATE | EFF DATE / PAID-TO | TRANS DESCRIPTION | AMOUNT | TYPE | ACCT BALANCE |
|---|---|---|---|---|---|
| | | | | | 621600.00 |
| 11-08-16 | 11-04-16 | INITIAL ADVANCE | 621600.00 | PRINCIPAL | |
| 00-00-00 | 11-04-16 | | | | |
| 00-00-00 | | | | | |
| | | | | | 621600.00 |
| 11-08-16 | 11-04-16 | CLOSING COST | 250.00 | FEE | |
| 00-00-00 | 00-00-00 | | | | |
| 00-00-00 | | | | | |
| | | | | | 621600.00 |
| 11-08-16 | 11-04-16 | ESCROW DEPOSIT | 2926.62 | ESCROW AMT | |
| 00-00-00 | 00-00-00 | | 30,072 | ESCROW NBR | |
| 00-00-00 | | | | | |
| 11-08-16 | | ESCROW RESERVE | | | |
| | | | | | 621600.00 |
| 11-08-16 | 11-04-16 | PAYMENT | .00 | PRINCIPAL | |
| 00-00-00 | 11-04-16 | | 1666.71 | INTEREST | |
| 00-00-00 | | | | | |
| 11-08-16 | | PREPAID INTEREST | | | |
| | | | | | 620666.20 |
| 01-03-17 | 01-01-17 | PAYMENT | 933.80 | PRINCIPAL | |
| 01-01-17 | 01-01-17 | | 1901.01 | INTEREST | |
| 01-03-17 | | | | | |
| | | | 975.55 | ESCROW-2 | |
| 01-03-17 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 619706.32 |
| 02-01-17 | 02-01-17 | PAYMENT | 959.88 | PRINCIPAL | |
| 02-01-17 | 02-01-17 | | 1874.93 | INTEREST | |
| 02-01-17 | | | | | |
| | | | 975.55 | ESCROW-2 | |
| 02-01-17 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |

CENTRAL BANK & TRUST CO
CUSTOMER LOAN HISTORY



NOTE NBR [redacted]2861

SHORT NAME EHN TIMOTHY D

REQUEST DATE 9-17-2026

*--------------------HISTORY: 00-00-00 THRU 00-00-00 ---------------------------*

| POST DTE / DUE DATE / REC DATE | EFF DATE / PAID-TO | TRANS DESCRIPTION | AMOUNT | TYPE | ACCT BALANCE |
|---|---|---|---|---|---|
| | | | | | 618743.54 |
| 03-01-17 | 03-01-17 | PAYMENT | 962.78 | PRINCIPAL | |
| 03-01-17 | 03-01-17 | | 1872.03 | INTEREST | |
| 03-01-17 | | | | | |
| | | | 975.54 | ESCROW-2 | |
| 03-01-17 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 617777.85 |
| 04-03-17 | 04-01-17 | PAYMENT | 965.69 | PRINCIPAL | |
| 04-01-17 | 04-01-17 | | 1869.12 | INTEREST | |
| 04-03-17 | | | | | |
| | | | 975.54 | ESCROW-2 | |
| 04-03-17 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 616809.25 |
| 05-01-17 | 05-01-17 | PAYMENT | 968.60 | PRINCIPAL | |
| 05-01-17 | 05-01-17 | | 1866.21 | INTEREST | |
| 05-01-17 | | | | | |
| | | | 975.54 | ESCROW-2 | |
| 05-01-17 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 615837.72 |
| 06-01-17 | 06-01-17 | PAYMENT | 971.53 | PRINCIPAL | |
| 06-01-17 | 06-01-17 | | 1863.28 | INTEREST | |
| 06-01-17 | | | | | |
| | | | 975.54 | ESCROW-2 | |
| 06-01-17 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 614863.25 |
| 07-03-17 | 07-01-17 | PAYMENT | 974.47 | PRINCIPAL | |
| 07-01-17 | 07-01-17 | | 1860.34 | INTEREST | |
| 07-03-17 | | | | | |
| | | | 975.54 | ESCROW-2 | |
| 07-03-17 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 613885.84 |
| 08-01-17 | 08-01-17 | PAYMENT | 977.41 | PRINCIPAL | |
| 08-01-17 | 08-01-17 | | 1857.40 | INTEREST | |
| 08-01-17 | | | | | |
| | | | 975.54 | ESCROW-2 | |
| 08-01-17 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 612905.48 |
| 09-01-17 | 09-01-17 | PAYMENT | 980.36 | PRINCIPAL | |
| 09-01-17 | 09-01-17 | | 1854.45 | INTEREST | |
| 09-01-17 | | | | | |
| | | | 975.54 | ESCROW-2 | |
| 09-01-17 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 611922.15 |
| 10-02-17 | 10-01-17 | PAYMENT | 983.33 | PRINCIPAL | |
| 10-01-17 | 10-01-17 | | 1851.48 | INTEREST | |
| 10-02-17 | | | | | |
| | | | 975.54 | ESCROW-2 | |
| 10-02-17 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |

CENTRAL BANK & TRUST CO
CUSTOMER LOAN HISTORY



NOTE NBR [redacted]2861
SHORT NAME EHN TIMOTHY D

REQUEST DATE
9-17-2026

*--------------------HISTORY: 00-00-00 THRU 00-00-00 --------------------------*

| POST DTE / DUE DATE / REC DATE | EFF DATE / PAID-TO | TRANS DESCRIPTION | AMOUNT | TYPE | ACCT BALANCE |
|---|---|---|---|---|---|
| | | | | | 611922.15 |
| 10-26-17 | 10-26-17 | ESCROW DISBURSEMENT | 2941.00 | ESCROW DISB | |
| 00-00-00 | 00-00-00 | | 4,000 | ESCROW NBR | |
| 00-00-00 | | | | | |
| 10-26-17 | | ESCROW INS STATE FRM [redacted] | | | |
| | | | | | 611922.15 |
| 10-27-17 | 10-27-17 | ESCROW DISBURSEMENT | 8526.14 | ESCROW DISB | |
| 00-00-00 | 00-00-00 | | 30,072 | ESCROW NBR | |
| 00-00-00 | | | | | |
| 10-27-17 | | BOONE | | | |
| | | | | | 610935.86 |
| 11-01-17 | 11-01-17 | PAYMENT | 986.29 | PRINCIPAL | |
| 11-01-17 | 11-01-17 | | 1848.52 | INTEREST | |
| 11-01-17 | | | | | |
| | | | 975.54 | ESCROW-2 | |
| 11-01-17 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 609946.58 |
| 12-01-17 | 12-01-17 | PAYMENT | 989.28 | PRINCIPAL | |
| 12-01-17 | 12-01-17 | | 1845.53 | INTEREST | |
| 12-01-17 | | | | | |
| | | | 975.54 | ESCROW-2 | |
| 12-01-17 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 608954.32 |
| 01-02-18 | 01-01-18 | PAYMENT | 992.26 | PRINCIPAL | |
| 01-01-18 | 01-01-18 | | 1842.55 | INTEREST | |
| 01-01-18 | | | | | |
| | | | 975.54 | ESCROW-2 | |
| 01-02-18 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 608954.32 |
| 01-26-18 | 01-26-18 | ESCROW | 339.04 | ESCROW AMT | |
| 00-00-00 | 00-00-00 | | 4,000 | ESCROW NBR | |
| 00-00-00 | | | | | |
| 01-26-18 | | 2017 ESCROW SURPLUS CHECK# 13277 | | | |
| | | | | | 607959.06 |
| 02-14-18 | 02-01-18 | PAYMENT | 995.26 | PRINCIPAL | |
| 02-01-18 | 02-01-18 | | 1839.55 | INTEREST | |
| 02-01-18 | | | | | |
| | | | 975.54 | ESCROW-2 | |
| 02-14-18 | | BACKDATE PER [redacted] DEDUCT ERR | | | |
| | | | | | 606960.79 |
| 03-01-18 | 03-01-18 | PAYMENT | 998.27 | PRINCIPAL | |
| 03-01-18 | 03-01-18 | | 1836.54 | INTEREST | |
| 03-01-18 | | | | | |
| | | | 955.59 | ESCROW-2 | |
| 03-01-18 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 605959.51 |
| 04-02-18 | 04-01-18 | PAYMENT | 1001.28 | PRINCIPAL | |
| 04-01-18 | 04-01-18 | | 1833.53 | INTEREST | |
| 04-01-18 | | | | | |
| | | | 955.59 | ESCROW-2 | |
| 04-02-18 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |

CENTRAL BANK & TRUST CO
CUSTOMER LOAN HISTORY



NOTE NBR [redacted]2861
SHORT NAME EHN TIMOTHY D

REQUEST DATE
9-17-2026

*--------------------HISTORY: 00-00-00 THRU 00-00-00 --------------------------*

| POST DTE / DUE DATE / REC DATE | EFF DATE / PAID-TO | TRANS DESCRIPTION | AMOUNT | TYPE | ACCT BALANCE |
|---|---|---|---|---|---|
| | | | | | 604955.20 |
| 05-01-18 | 05-01-18 | PAYMENT | 1004.31 | PRINCIPAL | |
| 05-01-18 | 05-01-18 | | 1830.50 | INTEREST | |
| 05-01-18 | | | | | |
| | | | 955.59 | ESCROW-2 | |
| 05-01-18 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 603947.86 |
| 06-01-18 | 06-01-18 | PAYMENT | 1007.34 | PRINCIPAL | |
| 06-01-18 | 06-01-18 | | 1827.47 | INTEREST | |
| 06-01-18 | | | | | |
| | | | 955.59 | ESCROW-2 | |
| 06-01-18 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 602937.48 |
| 07-02-18 | 07-01-18 | PAYMENT | 1010.38 | PRINCIPAL | |
| 07-01-18 | 07-01-18 | | 1824.43 | INTEREST | |
| 07-01-18 | | | | | |
| | | | 955.59 | ESCROW-2 | |
| 07-02-18 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 601924.04 |
| 08-01-18 | 08-01-18 | PAYMENT | 1013.44 | PRINCIPAL | |
| 08-01-18 | 08-01-18 | | 1821.37 | INTEREST | |
| 08-01-18 | | | | | |
| | | | 955.59 | ESCROW-2 | |
| 08-01-18 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 600907.54 |
| 09-04-18 | 09-01-18 | PAYMENT | 1016.50 | PRINCIPAL | |
| 09-01-18 | 09-01-18 | | 1818.31 | INTEREST | |
| 09-01-18 | | | | | |
| | | | 955.59 | ESCROW-2 | |
| 09-04-18 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 599887.97 |
| 10-01-18 | 10-01-18 | PAYMENT | 1019.57 | PRINCIPAL | |
| 10-01-18 | 10-01-18 | | 1815.24 | INTEREST | |
| 10-01-18 | | | | | |
| | | | 955.59 | ESCROW-2 | |
| 10-01-18 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 599887.97 |
| 10-17-18 | 10-17-18 | ESCROW DISBURSEMENT | 8601.13 | ESCROW DISB | |
| 00-00-00 | 00-00-00 | | 30,072 | ESCROW NBR | |
| 00-00-00 | | | | | |
| 10-17-18 | | BOONE CO | | | |
| | | | | | 599887.97 |
| 10-23-18 | 10-23-18 | ESCROW DISBURSEMENT | 3059.09 | ESCROW DISB | |
| 00-00-00 | 00-00-00 | | 4,000 | ESCROW NBR | |
| 00-00-00 | | | | | |
| 10-23-18 | | STATEFARM INS | | | |
| | | | | | 598865.32 |
| 11-01-18 | 11-01-18 | PAYMENT | 1022.65 | PRINCIPAL | |
| 11-01-18 | 11-01-18 | | 1812.16 | INTEREST | |
| 11-01-18 | | | | | |
| | | | 955.59 | ESCROW-2 | |
| 11-01-18 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |

CENTRAL BANK & TRUST CO
CUSTOMER LOAN HISTORY



NOTE NBR [redacted]2861
SHORT NAME EHN TIMOTHY D

REQUEST DATE
9-17-2026

*--------------------HISTORY: 00-00-00 THRU 00-00-00 ---------------------------*

| POST DTE / DUE DATE / REC DATE | EFF DATE / PAID-TO | TRANS DESCRIPTION | AMOUNT | TYPE | ACCT BALANCE |
|---|---|---|---|---|---|
| | | | | | 597839.59 |
| 12-03-18 | 12-01-18 | PAYMENT | 1025.73 | PRINCIPAL | |
| 12-01-18 | 12-01-18 | | 1809.08 | INTEREST | |
| 12-01-18 | | | | | |
| | | | 955.59 | ESCROW-2 | |
| 12-03-18 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 596810.75 |
| 01-02-19 | 01-01-19 | PAYMENT | 1028.84 | PRINCIPAL | |
| 01-01-19 | 01-01-19 | | 1805.97 | INTEREST | |
| 01-01-19 | | | | | |
| | | | 955.59 | ESCROW-2 | |
| 01-02-19 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 595778.81 |
| 02-01-19 | 02-01-19 | PAYMENT | 1031.94 | PRINCIPAL | |
| 02-01-19 | 02-01-19 | | 1802.87 | INTEREST | |
| 02-01-19 | | | | | |
| | | | 955.59 | ESCROW-2 | |
| 02-01-19 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 594743.74 |
| 03-01-19 | 03-01-19 | PAYMENT | 1035.07 | PRINCIPAL | |
| 03-01-19 | 03-01-19 | | 1799.74 | INTEREST | |
| 03-01-19 | | | | | |
| | | | 994.47 | ESCROW-2 | |
| 03-01-19 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 593705.56 |
| 04-01-19 | 04-01-19 | PAYMENT | 1038.18 | PRINCIPAL | |
| 04-01-19 | 04-01-19 | | 1796.63 | INTEREST | |
| 04-01-19 | | | | | |
| | | | 994.47 | ESCROW-2 | |
| 04-01-19 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 592664.23 |
| 05-01-19 | 05-01-19 | PAYMENT | 1041.33 | PRINCIPAL | |
| 05-01-19 | 05-01-19 | | 1793.48 | INTEREST | |
| 05-01-19 | | | | | |
| | | | 994.47 | ESCROW-2 | |
| 05-01-19 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 591619.76 |
| 06-03-19 | 06-01-19 | PAYMENT | 1044.47 | PRINCIPAL | |
| 06-01-19 | 06-01-19 | | 1790.34 | INTEREST | |
| 06-01-19 | | | | | |
| | | | 994.47 | ESCROW-2 | |
| 06-03-19 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 590572.14 |
| 07-01-19 | 07-01-19 | PAYMENT | 1047.62 | PRINCIPAL | |
| 07-01-19 | 07-01-19 | | 1787.19 | INTEREST | |
| 07-01-19 | | | | | |
| | | | 994.47 | ESCROW-2 | |
| 07-01-19 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |

```
                         CENTRAL BANK & TRUST CO                                    PAGE 0006
                         CUSTOMER LOAN HISTORY
NOTE NBR       [redacted]2861                                                   REQUEST DATE
SHORT NAME  EHN TIMOTHY D                                                          9-17-2026

*--------------------HISTORY:  00-00-00 THRU 00-00-00 -------------------------*
 POST DTE EFF DATE TRANS DESCRIPTION             AMOUNT   TYPE             ACCT BALANCE
 DUE DATE PAID-TO
 REC DATE                                                                     589521.35
 08-01-19 08-01-19 PAYMENT                        1050.79  PRINCIPAL
 08-01-19 08-01-19                                1784.02  INTEREST
 08-01-19
                                                   994.47  ESCROW-2
 08-01-19          AUTO-DEBIT ACCOUNT NO. [redacted]1558
                                                                              588467.38
 09-03-19 09-01-19 PAYMENT                        1053.97  PRINCIPAL
 09-01-19 09-01-19                                1780.84  INTEREST
 09-01-19
                                                   994.47  ESCROW-2
 09-03-19          AUTO-DEBIT ACCOUNT NO. [redacted]1558
                                                                              587410.23
 10-01-19 10-01-19 PAYMENT                        1057.15  PRINCIPAL
 10-01-19 10-01-19                                1777.66  INTEREST
 10-01-19
                                                   994.47  ESCROW-2
 10-01-19          AUTO-DEBIT ACCOUNT NO. [redacted]1558
                                                                              587410.23
 10-10-19 10-10-19 ESCROW DISBURSEMENT            8730.40  ESCROW DISB
 00-00-00 00-00-00                                 30,072  ESCROW NBR
 00-00-00
 10-10-19          BOONE CO
                                                                              587410.23
 10-30-19 10-30-19 ESCROW DISBURSEMENT            3259.64  ESCROW DISB
 00-00-00 00-00-00                                  4,000  ESCROW NBR
 00-00-00
 10-30-19          STATE FARM INS
                                                                              586349.89
 11-01-19 11-01-19 PAYMENT                        1060.34  PRINCIPAL
 11-01-19 11-01-19                                1774.47  INTEREST
 11-01-19
                                                   994.47  ESCROW-2
 11-01-19          AUTO-DEBIT ACCOUNT NO. [redacted]1558
                                                                              585286.35
 12-02-19 12-01-19 PAYMENT                        1063.54  PRINCIPAL
 12-01-19 12-01-19                                1771.27  INTEREST
 12-01-19
                                                   994.47  ESCROW-2
 12-02-19          AUTO-DEBIT ACCOUNT NO. [redacted]1558
                                                                              584219.59
 01-02-20 01-01-20 PAYMENT                        1066.76  PRINCIPAL
 01-01-20 01-01-20                                1768.05  INTEREST
 01-01-20
                                                   994.47  ESCROW-2
 01-02-20          AUTO-DEBIT ACCOUNT NO. [redacted]1558
                                                                              583149.61
 02-03-20 02-01-20 PAYMENT                        1069.98  PRINCIPAL
 02-01-20 02-01-20                                1764.83  INTEREST
 02-01-20
                                                   994.47  ESCROW-2
 02-03-20          AUTO-DEBIT ACCOUNT NO. [redacted]1558
```

CENTRAL BANK & TRUST CO
CUSTOMER LOAN HISTORY



NOTE NBR [redacted]2861
SHORT NAME EHN TIMOTHY D

REQUEST DATE
9-17-2026

*--------------------HISTORY: 00-00-00 THRU 00-00-00 --------------------------*

| POST DTE / DUE DATE / REC DATE | EFF DATE / PAID-TO | TRANS DESCRIPTION | AMOUNT | TYPE | ACCT BALANCE |
|---|---|---|---|---|---|
| | | | | | 582076.40 |
| 03-02-20 | 03-01-20 | PAYMENT | 1073.21 | PRINCIPAL | |
| 03-01-20 | 03-01-20 | | 1761.60 | INTEREST | |
| 03-01-20 | | | | | |
| | | | 1038.11 | ESCROW-2 | |
| 03-02-20 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 580999.94 |
| 04-01-20 | 04-01-20 | PAYMENT | 1076.46 | PRINCIPAL | |
| 04-01-20 | 04-01-20 | | 1758.35 | INTEREST | |
| 04-01-20 | | | | | |
| | | | 1038.11 | ESCROW-2 | |
| 04-01-20 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 579920.24 |
| 05-01-20 | 05-01-20 | PAYMENT | 1079.70 | PRINCIPAL | |
| 05-01-20 | 05-01-20 | | 1755.11 | INTEREST | |
| 05-01-20 | | | | | |
| | | | 1038.11 | ESCROW-2 | |
| 05-01-20 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 578837.27 |
| 06-01-20 | 06-01-20 | PAYMENT | 1082.97 | PRINCIPAL | |
| 06-01-20 | 06-01-20 | | 1751.84 | INTEREST | |
| 06-01-20 | | | | | |
| | | | 1038.11 | ESCROW-2 | |
| 06-01-20 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 577751.03 |
| 07-01-20 | 07-01-20 | PAYMENT | 1086.24 | PRINCIPAL | |
| 07-01-20 | 07-01-20 | | 1748.57 | INTEREST | |
| 07-01-20 | | | | | |
| | | | 1038.11 | ESCROW-2 | |
| 07-01-20 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 576661.51 |
| 08-03-20 | 08-01-20 | PAYMENT | 1089.52 | PRINCIPAL | |
| 08-01-20 | 08-01-20 | | 1745.29 | INTEREST | |
| 08-01-20 | | | | | |
| | | | 1038.11 | ESCROW-2 | |
| 08-03-20 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 566661.51 |
| 08-11-20 | 08-10-20 | PAYMENT | 10000.00 | PRINCIPAL | |
| 00-00-00 | 08-01-20 | | | | |
| 00-00-00 | | | | | |
| 08-11-20 | | POSTING REJECTS | | | |
| | | | | | 576661.51 |
| 08-13-20 | 08-10-20 | PAYMENT REVERSED | 10000.00 | PRINCIPAL | |
| 00-00-00 | 08-01-20 | | | | |
| 00-00-00 | | | | | |
| 08-13-20 | | CUSTOMER POSTED TO LOAN IN ERROR | | | |
| | | | | | 575568.70 |
| 09-01-20 | 09-01-20 | PAYMENT | 1092.81 | PRINCIPAL | |
| 09-01-20 | 09-01-20 | | 1742.00 | INTEREST | |
| 09-01-20 | | | | | |
| | | | 1038.11 | ESCROW-2 | |
| 09-01-20 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |

CENTRAL BANK & TRUST CO
CUSTOMER LOAN HISTORY



NOTE NBR [redacted]2861
SHORT NAME EHN TIMOTHY D

REQUEST DATE
9-17-2026

*--------------------HISTORY: 00-00-00 THRU 00-00-00 --------------------------*

| POST DTE / DUE DATE / REC DATE | EFF DATE / PAID-TO | TRANS DESCRIPTION | AMOUNT | TYPE | ACCT BALANCE |
|---|---|---|---|---|---|
| | | | | | 574472.59 |
| 10-01-20 | 10-01-20 | PAYMENT | 1096.11 | PRINCIPAL | |
| 10-01-20 | 10-01-20 | | 1738.70 | INTEREST | |
| 10-01-20 | | | | | |
| | | | 1038.11 | ESCROW-2 | |
| 10-01-20 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 574472.59 |
| 10-20-20 | 10-20-20 | ESCROW DISBURSEMENT | 8629.54 | ESCROW DISB | |
| 00-00-00 | 00-00-00 | | 30,072 | ESCROW NBR | |
| 00-00-00 | | | | | |
| 10-20-20 | | BOONE CO | | | |
| | | | | | 574472.59 |
| 10-29-20 | 10-29-20 | ESCROW DISBURSEMENT | 3516.17 | ESCROW DISB | |
| 00-00-00 | 00-00-00 | | 4,000 | ESCROW NBR | |
| 00-00-00 | | | | | |
| 10-29-20 | | STATE FARM INS | | | |
| | | | | | 573373.16 |
| 11-02-20 | 11-01-20 | PAYMENT | 1099.43 | PRINCIPAL | |
| 11-01-20 | 11-01-20 | | 1735.38 | INTEREST | |
| 11-01-20 | | | | | |
| | | | 1038.11 | ESCROW-2 | |
| 11-02-20 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 572270.42 |
| 12-01-20 | 12-01-20 | PAYMENT | 1102.74 | PRINCIPAL | |
| 12-01-20 | 12-01-20 | | 1732.07 | INTEREST | |
| 12-01-20 | | | | | |
| | | | 1038.11 | ESCROW-2 | |
| 12-01-20 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 571164.34 |
| 01-04-21 | 01-01-21 | PAYMENT | 1106.08 | PRINCIPAL | |
| 01-01-21 | 01-01-21 | | 1728.73 | INTEREST | |
| 01-01-21 | | | | | |
| | | | 1038.11 | ESCROW-2 | |
| 01-04-21 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 570054.92 |
| 02-01-21 | 02-01-21 | PAYMENT | 1109.42 | PRINCIPAL | |
| 02-01-21 | 02-01-21 | | 1725.39 | INTEREST | |
| 02-01-21 | | | | | |
| | | | 1038.11 | ESCROW-2 | |
| 02-01-21 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 568942.15 |
| 03-01-21 | 03-01-21 | PAYMENT | 1112.77 | PRINCIPAL | |
| 03-01-21 | 03-01-21 | | 1722.04 | INTEREST | |
| 03-01-21 | | | | | |
| | | | 1030.52 | ESCROW-2 | |
| 03-01-21 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 567826.02 |
| 04-01-21 | 04-01-21 | PAYMENT | 1116.13 | PRINCIPAL | |
| 04-01-21 | 04-01-21 | | 1718.68 | INTEREST | |
| 04-01-21 | | | | | |
| | | | 1030.52 | ESCROW-2 | |
| 04-01-21 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |

CENTRAL BANK & TRUST CO
CUSTOMER LOAN HISTORY

PAGE 0009

NOTE NBR [redacted]2861
SHORT NAME EHN TIMOTHY D

REQUEST DATE 9-17-2026

*--------------------HISTORY: 00-00-00 THRU 00-00-00 --------------------------*

| POST DTE / DUE DATE / REC DATE | EFF DATE / PAID-TO | TRANS DESCRIPTION | AMOUNT | TYPE | ACCT BALANCE |
|---|---|---|---|---|---|
| | | | | | 566706.52 |
| 05-03-21 | 05-01-21 | PAYMENT | 1119.50 | PRINCIPAL | |
| 05-01-21 | 05-01-21 | | 1715.31 | INTEREST | |
| 05-01-21 | | | | | |
| | | | 1030.52 | ESCROW-2 | |
| 05-03-21 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 565583.64 |
| 06-01-21 | 06-01-21 | PAYMENT | 1122.88 | PRINCIPAL | |
| 06-01-21 | 06-01-21 | | 1711.93 | INTEREST | |
| 06-01-21 | | | | | |
| | | | 1030.52 | ESCROW-2 | |
| 06-01-21 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 564457.36 |
| 07-01-21 | 07-01-21 | PAYMENT | 1126.28 | PRINCIPAL | |
| 07-01-21 | 07-01-21 | | 1708.53 | INTEREST | |
| 07-01-21 | | | | | |
| | | | 1030.52 | ESCROW-2 | |
| 07-01-21 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 563327.68 |
| 08-02-21 | 08-01-21 | PAYMENT | 1129.68 | PRINCIPAL | |
| 08-01-21 | 08-01-21 | | 1705.13 | INTEREST | |
| 08-01-21 | | | | | |
| | | | 1030.52 | ESCROW-2 | |
| 08-02-21 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 562194.59 |
| 09-01-21 | 09-01-21 | PAYMENT | 1133.09 | PRINCIPAL | |
| 09-01-21 | 09-01-21 | | 1701.72 | INTEREST | |
| 09-01-21 | | | | | |
| | | | 1030.52 | ESCROW-2 | |
| 09-01-21 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 561058.08 |
| 10-01-21 | 10-01-21 | PAYMENT | 1136.51 | PRINCIPAL | |
| 10-01-21 | 10-01-21 | | 1698.30 | INTEREST | |
| 10-01-21 | | | | | |
| | | | 1030.52 | ESCROW-2 | |
| 10-01-21 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 561058.08 |
| 10-08-21 | 10-08-21 | ESCROW DISBURSEMENT | 8481.59 | ESCROW DISB | |
| 00-00-00 | 00-00-00 | | 30,072 | ESCROW NBR | |
| 00-00-00 | | | | | |
| 10-08-21 | | BOONE CO | | | |
| | | | | | 561058.08 |
| 10-20-21 | 10-20-21 | ESCROW DISBURSEMENT | 4208.41 | ESCROW DISB | |
| 00-00-00 | 00-00-00 | | 4,000 | ESCROW NBR | |
| 00-00-00 | | | | | |
| 10-20-21 | | STATE FARM INS | | | |
| | | | | | 559918.13 |
| 11-01-21 | 11-01-21 | PAYMENT | 1139.95 | PRINCIPAL | |
| 11-01-21 | 11-01-21 | | 1694.86 | INTEREST | |
| 11-01-21 | | | | | |
| | | | 1030.52 | ESCROW-2 | |
| 11-01-21 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |

CENTRAL BANK & TRUST CO
CUSTOMER LOAN HISTORY

NOTE NBR [redacted]2861
SHORT NAME EHN TIMOTHY D

REQUEST DATE
9-17-2026

*-------------------HISTORY: 00-00-00 THRU 00-00-00 --------------------------*

| POST DTE / DUE DATE / REC DATE | EFF DATE / PAID-TO | TRANS DESCRIPTION | AMOUNT | TYPE | ACCT BALANCE |
|---|---|---|---|---|---|
| | | | | | 558774.74 |
| 12-01-21 | 12-01-21 | PAYMENT | 1143.39 | PRINCIPAL | |
| 12-01-21 | 12-01-21 | | 1691.42 | INTEREST | |
| 12-01-21 | | | | | |
| | | | 1030.52 | ESCROW-2 | |
| 12-01-21 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 557627.89 |
| 01-03-22 | 01-01-22 | PAYMENT | 1146.85 | PRINCIPAL | |
| 01-01-22 | 01-01-22 | | 1687.96 | INTEREST | |
| 01-01-22 | | | | | |
| | | | 1030.52 | ESCROW-2 | |
| 01-03-22 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 556477.59 |
| 02-01-22 | 02-01-22 | PAYMENT | 1150.30 | PRINCIPAL | |
| 02-01-22 | 02-01-22 | | 1684.51 | INTEREST | |
| 02-01-22 | | | | | |
| | | | 1030.52 | ESCROW-2 | |
| 02-01-22 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 555323.80 |
| 03-01-22 | 03-01-22 | PAYMENT | 1153.79 | PRINCIPAL | |
| 03-01-22 | 03-01-22 | | 1681.02 | INTEREST | |
| 03-01-22 | | | | | |
| | | | 1121.76 | ESCROW-2 | |
| 03-01-22 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 554166.53 |
| 04-01-22 | 04-01-22 | PAYMENT | 1157.27 | PRINCIPAL | |
| 04-01-22 | 04-01-22 | | 1677.54 | INTEREST | |
| 04-01-22 | | | | | |
| | | | 1121.76 | ESCROW-2 | |
| 04-01-22 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 553005.77 |
| 05-02-22 | 05-01-22 | PAYMENT | 1160.76 | PRINCIPAL | |
| 05-01-22 | 05-01-22 | | 1674.05 | INTEREST | |
| 05-01-22 | | | | | |
| | | | 1121.76 | ESCROW-2 | |
| 05-02-22 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 551841.50 |
| 06-01-22 | 06-01-22 | PAYMENT | 1164.27 | PRINCIPAL | |
| 06-01-22 | 06-01-22 | | 1670.54 | INTEREST | |
| 06-01-22 | | | | | |
| | | | 1121.76 | ESCROW-2 | |
| 06-01-22 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 550673.71 |
| 07-01-22 | 07-01-22 | PAYMENT | 1167.79 | PRINCIPAL | |
| 07-01-22 | 07-01-22 | | 1667.02 | INTEREST | |
| 07-01-22 | | | | | |
| | | | 1121.76 | ESCROW-2 | |
| 07-01-22 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |

CENTRAL BANK & TRUST CO
CUSTOMER LOAN HISTORY

PAGE 0011

NOTE NBR [redacted]2861
SHORT NAME EHN TIMOTHY D

REQUEST DATE
9-17-2026

*--------------------HISTORY: 00-00-00 THRU 00-00-00 --------------------------*

| POST DTE / DUE DATE / REC DATE | EFF DATE / PAID-TO | TRANS DESCRIPTION | AMOUNT | TYPE | ACCT BALANCE |
|---|---|---|---|---|---|
| | | | | | 549502.39 |
| 08-01-22 | 08-01-22 | PAYMENT | 1171.32 | PRINCIPAL | |
| 08-01-22 | 08-01-22 | | 1663.49 | INTEREST | |
| 08-01-22 | | | | | |
| | | | 1121.76 | ESCROW-2 | |
| 08-01-22 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 548327.53 |
| 09-01-22 | 09-01-22 | PAYMENT | 1174.86 | PRINCIPAL | |
| 09-01-22 | 09-01-22 | | 1659.95 | INTEREST | |
| 09-01-22 | | | | | |
| | | | 1121.76 | ESCROW-2 | |
| 09-01-22 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 547149.13 |
| 10-03-22 | 10-01-22 | PAYMENT | 1178.40 | PRINCIPAL | |
| 10-01-22 | 10-01-22 | | 1656.41 | INTEREST | |
| 10-01-22 | | | | | |
| | | | 1121.76 | ESCROW-2 | |
| 10-03-22 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 547149.13 |
| 10-07-22 | 10-07-22 | ESCROW DISBURSEMENT | 8464.40 | ESCROW DISB | |
| 00-00-00 | 00-00-00 | | 30,072 | ESCROW NBR | |
| 00-00-00 | | | | | |
| 10-07-22 | | BOONE CO | | | |
| | | | | | 547149.13 |
| 10-20-22 | 10-20-22 | ESCROW DISBURSEMENT | 4336.68 | ESCROW DISB | |
| 00-00-00 | 00-00-00 | | 4,000 | ESCROW NBR | |
| 00-00-00 | | | | | |
| 10-20-22 | | STATE FARM INS | | | |
| | | | | | 545967.17 |
| 11-01-22 | 11-01-22 | PAYMENT | 1181.96 | PRINCIPAL | |
| 11-01-22 | 11-01-22 | | 1652.85 | INTEREST | |
| 11-01-22 | | | | | |
| | | | 1121.76 | ESCROW-2 | |
| 11-01-22 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 544781.63 |
| 12-01-22 | 12-01-22 | PAYMENT | 1185.54 | PRINCIPAL | |
| 12-01-22 | 12-01-22 | | 1649.27 | INTEREST | |
| 12-01-22 | | | | | |
| | | | 1121.76 | ESCROW-2 | |
| 12-01-22 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 543592.52 |
| 01-03-23 | 01-01-23 | PAYMENT | 1189.11 | PRINCIPAL | |
| 01-01-23 | 01-01-23 | | 1645.70 | INTEREST | |
| 01-01-23 | | | | | |
| | | | 1121.76 | ESCROW-2 | |
| 01-03-23 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 542399.81 |
| 02-01-23 | 02-01-23 | PAYMENT | 1192.71 | PRINCIPAL | |
| 02-01-23 | 02-01-23 | | 1642.10 | INTEREST | |
| 02-01-23 | | | | | |
| | | | 1121.76 | ESCROW-2 | |
| 02-01-23 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |

CENTRAL BANK & TRUST CO
CUSTOMER LOAN HISTORY



NOTE NBR [redacted]2861
SHORT NAME EHN TIMOTHY D

REQUEST DATE
9-17-2026

*--------------------HISTORY: 00-00-00 THRU 00-00-00 --------------------------*

| POST DTE / DUE DATE / REC DATE | EFF DATE / PAID-TO | TRANS DESCRIPTION | AMOUNT | TYPE | ACCT BALANCE |
|---|---|---|---|---|---|
| | | | | | 541203.50 |
| 03-01-23 | 03-01-23 | PAYMENT | 1196.31 | PRINCIPAL | |
| 03-01-23 | 03-01-23 | | 1638.50 | INTEREST | |
| 03-01-23 | | | | | |
| | | | 1079.87 | ESCROW-2 | |
| 03-01-23 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 540003.57 |
| 04-03-23 | 04-01-23 | PAYMENT | 1199.93 | PRINCIPAL | |
| 04-01-23 | 04-01-23 | | 1634.88 | INTEREST | |
| 04-01-23 | | | | | |
| | | | 1079.87 | ESCROW-2 | |
| 04-03-23 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 538800.03 |
| 05-01-23 | 05-01-23 | PAYMENT | 1203.54 | PRINCIPAL | |
| 05-01-23 | 05-01-23 | | 1631.27 | INTEREST | |
| 05-01-23 | | | | | |
| | | | 1079.87 | ESCROW-2 | |
| 05-01-23 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 537592.84 |
| 06-01-23 | 06-01-23 | PAYMENT | 1207.19 | PRINCIPAL | |
| 06-01-23 | 06-01-23 | | 1627.62 | INTEREST | |
| 06-01-23 | | | | | |
| | | | 1079.87 | ESCROW-2 | |
| 06-01-23 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 536382.01 |
| 07-03-23 | 07-01-23 | PAYMENT | 1210.83 | PRINCIPAL | |
| 07-01-23 | 07-01-23 | | 1623.98 | INTEREST | |
| 07-01-23 | | | | | |
| | | | 1079.87 | ESCROW-2 | |
| 07-03-23 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 535167.52 |
| 08-01-23 | 08-01-23 | PAYMENT | 1214.49 | PRINCIPAL | |
| 08-01-23 | 08-01-23 | | 1620.32 | INTEREST | |
| 08-01-23 | | | | | |
| | | | 1079.87 | ESCROW-2 | |
| 08-01-23 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 533949.36 |
| 09-01-23 | 09-01-23 | PAYMENT | 1218.16 | PRINCIPAL | |
| 09-01-23 | 09-01-23 | | 1616.65 | INTEREST | |
| 09-01-23 | | | | | |
| | | | 1079.87 | ESCROW-2 | |
| 09-01-23 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 532727.52 |
| 10-02-23 | 10-01-23 | PAYMENT | 1221.84 | PRINCIPAL | |
| 10-01-23 | 10-01-23 | | 1612.97 | INTEREST | |
| 10-02-23 | | | | | |
| | | | 1079.87 | ESCROW-2 | |
| 10-02-23 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |

CENTRAL BANK & TRUST CO
CUSTOMER LOAN HISTORY



NOTE NBR [redacted]2861
SHORT NAME EHN TIMOTHY D

REQUEST DATE 9-17-2026

*--------------------HISTORY: 00-00-00 THRU 00-00-00 --------------------------*

| POST DTE / DUE DATE / REC DATE | EFF DATE / PAID-TO | TRANS DESCRIPTION | AMOUNT | TYPE | ACCT BALANCE |
|---|---|---|---|---|---|
| | | | | | 532727.52 |
| 10-06-23 | 10-06-23 | ESCROW DISBURSEMENT | 4877.24 | ESCROW DISB | |
| 00-00-00 | 00-00-00 | | 4,000 | ESCROW NBR | |
| 00-00-00 | | | | | |
| 10-06-23 | | STATE FARM INS | | | |
| | | | | | 532727.52 |
| 10-06-23 | 10-06-23 | ESCROW DISBURSEMENT | 8578.71 | ESCROW DISB | |
| 00-00-00 | 00-00-00 | | 30,072 | ESCROW NBR | |
| 00-00-00 | | | | | |
| 10-06-23 | | BOONE CO | | | |
| | | | | | 531501.99 |
| 11-01-23 | 11-01-23 | PAYMENT | 1225.53 | PRINCIPAL | |
| 11-01-23 | 11-01-23 | | 1609.28 | INTEREST | |
| 11-01-23 | | | | | |
| | | | 1079.87 | ESCROW-2 | |
| 11-01-23 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 530272.76 |
| 12-01-23 | 12-01-23 | PAYMENT | 1229.23 | PRINCIPAL | |
| 12-01-23 | 12-01-23 | | 1605.58 | INTEREST | |
| 12-01-23 | | | | | |
| | | | 1079.87 | ESCROW-2 | |
| 12-01-23 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 529039.82 |
| 01-02-24 | 01-01-24 | PAYMENT | 1232.94 | PRINCIPAL | |
| 01-01-24 | 01-01-24 | | 1601.87 | INTEREST | |
| 01-01-24 | | | | | |
| | | | 1079.87 | ESCROW-2 | |
| 01-02-24 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 527803.15 |
| 02-01-24 | 02-01-24 | PAYMENT | 1236.67 | PRINCIPAL | |
| 02-01-24 | 02-01-24 | | 1598.14 | INTEREST | |
| 02-01-24 | | | | | |
| | | | 1079.87 | ESCROW-2 | |
| 02-01-24 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 526562.75 |
| 03-01-24 | 03-01-24 | PAYMENT | 1240.40 | PRINCIPAL | |
| 03-01-24 | 03-01-24 | | 1594.41 | INTEREST | |
| 03-01-24 | | | | | |
| | | | 1198.64 | ESCROW-2 | |
| 03-01-24 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 525318.59 |
| 04-01-24 | 04-01-24 | PAYMENT | 1244.16 | PRINCIPAL | |
| 04-01-24 | 04-01-24 | | 1590.65 | INTEREST | |
| 04-01-24 | | | | | |
| | | | 1198.64 | ESCROW-2 | |
| 04-01-24 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 524070.68 |
| 05-01-24 | 05-01-24 | PAYMENT | 1247.91 | PRINCIPAL | |
| 05-01-24 | 05-01-24 | | 1586.90 | INTEREST | |
| 05-01-24 | | | | | |
| | | | 1198.64 | ESCROW-2 | |
| 05-01-24 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |

CENTRAL BANK & TRUST CO
CUSTOMER LOAN HISTORY

PAGE 0014

NOTE NBR [redacted]2861
SHORT NAME EHN TIMOTHY D

REQUEST DATE
9-17-2026

*-------------------HISTORY: 00-00-00 THRU 00-00-00 -------------------------*

| POST DTE / DUE DATE / REC DATE | EFF DATE / PAID-TO | TRANS DESCRIPTION | AMOUNT | TYPE | ACCT BALANCE |
|---|---|---|---|---|---|
| | | | | | 522819.00 |
| 06-03-24 | 06-01-24 | PAYMENT | 1251.68 | PRINCIPAL | |
| 06-01-24 | 06-01-24 | | 1583.13 | INTEREST | |
| 06-01-24 | | | | | |
| | | | 1198.64 | ESCROW-2 | |
| 06-03-24 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 521563.54 |
| 07-01-24 | 07-01-24 | PAYMENT | 1255.46 | PRINCIPAL | |
| 07-01-24 | 07-01-24 | | 1579.35 | INTEREST | |
| 07-01-24 | | | | | |
| | | | 1198.64 | ESCROW-2 | |
| 07-01-24 | | AUTO-DEBIT ACCOUNT NO. [redacted]1558 | | | |
| | | | | | 520304.29 |
| 08-12-24 | 08-01-24 | PAYMENT | 1259.25 | PRINCIPAL | |
| 08-01-24 | 08-01-24 | | 1575.56 | INTEREST | |
| 08-12-24 | | | | | |
| | | | 1198.64 | ESCROW-2 | |
| | | | | | 520204.29 |
| 08-12-24 | 08-01-24 | PAYMENT | 100.00 | PRINCIPAL | |
| 00-00-00 | 08-01-24 | | | | |
| 08-12-24 | | | | | |
| | | | | | 518940.93 |
| 08-13-24 | 09-01-24 | PAYMENT | 1263.36 | PRINCIPAL | |
| 09-01-24 | 09-01-24 | | 1571.45 | INTEREST | |
| 08-12-24 | | | | | |
| | | | 1198.64 | ESCROW-2 | |
| 08-13-24 | | POSTING REJECTS 8/12/24 | | | |
| | | | | | 518840.38 |
| 08-13-24 | 09-01-24 | PAYMENT | 100.55 | PRINCIPAL | |
| 00-00-00 | 09-01-24 | | | | |
| 08-12-24 | | | | | |
| 08-13-24 | | POSTING REJECTS 8/12/24 | | | |
| | | | | | 517572.90 |
| 08-15-24 | 10-01-24 | PAYMENT | 1267.48 | PRINCIPAL | |
| 10-01-24 | 10-01-24 | | 1567.33 | INTEREST | |
| 08-14-24 | | | | | |
| | | | 1198.64 | ESCROW-2 | |
| 08-15-24 | | POSTING REJECTS 8/14/24 | | | |
| | | | | | 517472.90 |
| 08-15-24 | 10-01-24 | PAYMENT | 100.00 | PRINCIPAL | |
| 00-00-00 | 10-01-24 | | | | |
| 08-14-24 | | | | | |
| 08-15-24 | | POSTING REJECTS 8/14/24 | | | |
| | | | | | 517572.90 |
| 08-16-24 | 10-01-24 | PAYMENT REVERSED | 100.00 | PRINCIPAL | |
| 00-00-00 | 10-01-24 | | | | |
| 08-14-24 | | | | | |
| 08-16-24 | | CASH ITEM NSF | | | |

CENTRAL BANK & TRUST CO
CUSTOMER LOAN HISTORY



NOTE NBR [redacted]2861
SHORT NAME EHN TIMOTHY D

REQUEST DATE 9-17-2026

*--------------------HISTORY: 00-00-00 THRU 00-00-00 --------------------------*

| POST DTE / DUE DATE / REC DATE | EFF DATE / PAID-TO | TRANS DESCRIPTION | AMOUNT | TYPE | ACCT BALANCE |
|---|---|---|---|---|---|
| | | | | | 518840.38 |
| 08-16-24 | 10-01-24 | PAYMENT REVERSED | 1267.48 | PRINCIPAL | |
| 10-01-24 | 09-01-24 | | 1567.33 | INTEREST PAID | |
| 08-14-24 | | | | | |
| | | | 1198.64 | ESCROW 2 | |
| 08-16-24 | | CASH ITEM NSF | | | |
| | | | | | 518940.93 |
| 08-16-24 | 09-01-24 | PAYMENT REVERSED | 100.55 | PRINCIPAL | |
| 00-00-00 | 09-01-24 | | | | |
| 08-12-24 | | | | | |
| 08-16-24 | | CASH ITEM NSF | | | |
| | | | | | 520204.29 |
| 08-16-24 | 09-01-24 | PAYMENT REVERSED | 1263.36 | PRINCIPAL | |
| 09-01-24 | 08-01-24 | | 1571.45 | INTEREST PAID | |
| 08-12-24 | | | | | |
| | | | 1198.64 | ESCROW 2 | |
| 08-16-24 | | CASH ITEM NSF | | | |
| | | | | | 518940.93 |
| 09-03-24 | 09-01-24 | PAYMENT | 1263.36 | PRINCIPAL | |
| 09-01-24 | 09-01-24 | | 1571.45 | INTEREST | |
| 09-03-24 | | | | | |
| | | | 1198.64 | ESCROW-2 | |
| 09-03-24 | | | | | |
| | | | | | 518840.93 |
| 09-03-24 | 09-01-24 | PAYMENT | 100.00 | PRINCIPAL | |
| 00-00-00 | 09-01-24 | | | | |
| 09-03-24 | | | | | |
| 09-03-24 | | | | | |
| | | | | | 518840.93 |
| 09-30-24 | 09-30-24 | ESCROW DISBURSEMENT | 5914.58 | ESCROW DISB | |
| 00-00-00 | 00-00-00 | | 4,000 | ESCROW NBR | |
| 00-00-00 | | | | | |
| 09-30-24 | | STATE FARM INS | | | |
| | | | | | 517573.45 |
| 10-01-24 | 10-01-24 | PAYMENT | 1267.48 | PRINCIPAL | |
| 10-01-24 | 10-01-24 | | 1567.33 | INTEREST | |
| 10-01-24 | | | | | |
| | | | 1198.64 | ESCROW-2 | |
| | | | | | 517473.45 |
| 10-01-24 | 10-01-24 | PAYMENT | 100.00 | PRINCIPAL | |
| 00-00-00 | 10-01-24 | | | | |
| 10-01-24 | | | | | |
| | | | | | 517573.45 |
| 10-03-24 | 10-01-24 | PAYMENT REVERSED | 100.00 | PRINCIPAL | |
| 00-00-00 | 10-01-24 | | | | |
| 10-01-24 | | | | | |
| 10-03-24 | | CASH ITEM NSF DO NOT REDEPOSIT | | | |

CENTRAL BANK & TRUST CO
CUSTOMER LOAN HISTORY



NOTE NBR [redacted]2861
SHORT NAME EHN TIMOTHY D

REQUEST DATE
9-17-2026

*--------------------HISTORY: 00-00-00 THRU 00-00-00 --------------------------*

| POST DTE / DUE DATE / REC DATE | EFF DATE / PAID-TO | TRANS DESCRIPTION | AMOUNT | TYPE | ACCT BALANCE |
|---|---|---|---|---|---|
| | | | | | 518840.93 |
| 10-03-24 | 10-01-24 | PAYMENT REVERSED | 1267.48 | PRINCIPAL | |
| 10-01-24 | 09-01-24 | | 1567.33 | INTEREST PAID | |
| 10-01-24 | | | | | |
| | | | 1198.64 | ESCROW 2 | |
| 10-03-24 | | CASH ITEM NSF DO NOT REDEPOSIT | | | |
| | | | | | 518840.93 |
| 10-10-24 | 10-10-24 | ESCROW DISBURSEMENT | 8283.56 | ESCROW DISB | |
| 00-00-00 | 00-00-00 | | 30,072 | ESCROW NBR | |
| 00-00-00 | | | | | |
| 10-10-24 | | BOONE CO | | | |
| | | | | | 517573.45 |
| 10-16-24 | 10-01-24 | PAYMENT | 1267.48 | PRINCIPAL | |
| 10-01-24 | 10-01-24 | | 1567.33 | INTEREST | |
| 10-16-24 | | | | | |
| | | | 1198.64 | ESCROW-2 | |
| | | | | | 516302.14 |
| 11-06-24 | 11-01-24 | PAYMENT | 1271.31 | PRINCIPAL | |
| 11-01-24 | 11-01-24 | | 1563.50 | INTEREST | |
| 11-06-24 | | | | | |
| | | | 1198.64 | ESCROW-2 | |
| | | | | | 516202.14 |
| 11-06-24 | 11-01-24 | PAYMENT | 100.00 | PRINCIPAL | |
| 00-00-00 | 11-01-24 | | | | |
| 11-06-24 | | | | | |
| | | | | | 514926.70 |
| 12-02-24 | 12-01-24 | PAYMENT | 1275.44 | PRINCIPAL | |
| 12-01-24 | 12-01-24 | | 1559.37 | INTEREST | |
| 12-02-24 | | | | | |
| | | | 1198.64 | ESCROW-2 | |
| 12-02-24 | | | | | |
| | | | | | 514826.70 |
| 12-02-24 | 12-01-24 | PAYMENT | 100.00 | PRINCIPAL | |
| 00-00-00 | 12-01-24 | | | | |
| 12-02-24 | | | | | |
| 12-02-24 | | | | | |
| | | | | | 513547.09 |
| 01-02-25 | 01-01-25 | PAYMENT | 1279.61 | PRINCIPAL | |
| 01-01-25 | 01-01-25 | | 1555.20 | INTEREST | |
| 01-02-25 | | | | | |
| | | | 1198.64 | ESCROW-2 | |
| | | | | | 513447.09 |
| 01-02-25 | 01-01-25 | PAYMENT | 100.00 | PRINCIPAL | |
| 00-00-00 | 01-01-25 | | | | |
| 01-02-25 | | | | | |
| | | | | | 512163.32 |
| 02-04-25 | 02-01-25 | PAYMENT | 1283.77 | PRINCIPAL | |
| 02-01-25 | 02-01-25 | | 1551.04 | INTEREST | |
| 02-04-25 | | | | | |
| | | | 1198.64 | ESCROW-2 | |

CENTRAL BANK & TRUST CO                                        PAGE 0017
CUSTOMER LOAN HISTORY

NOTE NBR [redacted]2861                                        REQUEST DATE
SHORT NAME EHN TIMOTHY D                                       9-17-2026

*--------------------HISTORY: 00-00-00 THRU 00-00-00 ---------------------------*

| POST DTE / DUE DATE / REC DATE | EFF DATE / PAID-TO | TRANS DESCRIPTION | AMOUNT | TYPE | ACCT BALANCE |
|---|---|---|---|---|---|
| | | | | | 512063.32 |
| 02-04-25 | 02-01-25 | PAYMENT | 100.00 | PRINCIPAL | |
| 00-00-00 | 02-01-25 | | | | |
| 02-04-25 | | | | | |
| | | | | | 510775.37 |
| 02-28-25 | 03-01-25 | PAYMENT | 1287.95 | PRINCIPAL | |
| 03-01-25 | 03-01-25 | | 1546.86 | INTEREST | |
| 02-28-25 | | | | | |
| | | | 1270.80 | ESCROW-2 | |
| | | | | | 510747.53 |
| 02-28-25 | 03-01-25 | PAYMENT | 27.84 | PRINCIPAL | |
| 00-00-00 | 03-01-25 | | | | |
| 02-28-25 | | | | | |
| | | | | | 509455.60 |
| 03-31-25 | 04-01-25 | PAYMENT | 1291.93 | PRINCIPAL | |
| 04-01-25 | 04-01-25 | | 1542.88 | INTEREST | |
| 03-31-25 | | | | | |
| | | | 1270.80 | ESCROW-2 | |
| | | | | | 509427.76 |
| 03-31-25 | 04-01-25 | PAYMENT | 27.84 | PRINCIPAL | |
| 00-00-00 | 04-01-25 | | | | |
| 03-31-25 | | | | | |
| | | | | | 508131.85 |
| 05-01-25 | 05-01-25 | PAYMENT | 1295.91 | PRINCIPAL | |
| 05-01-25 | 05-01-25 | | 1538.90 | INTEREST | |
| 05-01-25 | | | | | |
| | | | 1270.80 | ESCROW-2 | |
| | | | | | 508104.01 |
| 05-01-25 | 05-01-25 | PAYMENT | 27.84 | PRINCIPAL | |
| 00-00-00 | 05-01-25 | | | | |
| 05-01-25 | | | | | |
| | | | | | 506804.09 |
| 06-02-25 | 06-01-25 | PAYMENT | 1299.92 | PRINCIPAL | |
| 06-01-25 | 06-01-25 | | 1534.89 | INTEREST | |
| 06-02-25 | | | | | |
| | | | 1270.80 | ESCROW-2 | |
| | | | | | 506776.25 |
| 06-02-25 | 06-01-25 | PAYMENT | 27.84 | PRINCIPAL | |
| 00-00-00 | 06-01-25 | | | | |
| 06-02-25 | | | | | |
| | | | | | 505472.33 |
| 07-08-25 | 07-01-25 | PAYMENT | 1303.92 | PRINCIPAL | |
| 07-01-25 | 07-01-25 | | 1530.89 | INTEREST | |
| 07-08-25 | | | | | |
| | | | 1270.80 | ESCROW-2 | |
| | | | | | 505472.33 |
| 08-18-25 | 08-18-25 | LATE FEE ASSESSED | 141.74 | L/F ASSESS | |
| 08-01-25 | 00-00-00 | | | | |
| 00-00-00 | | | | | |

CENTRAL BANK & TRUST CO
CUSTOMER LOAN HISTORY



NOTE NBR [redacted]2861
SHORT NAME EHN TIMOTHY D

REQUEST DATE 9-17-2026

*--------------------HISTORY: 00-00-00 THRU 00-00-00 --------------------------*

| POST DTE / DUE DATE / REC DATE | EFF DATE / PAID-TO | TRANS DESCRIPTION | AMOUNT | TYPE | ACCT BALANCE |
|---|---|---|---|---|---|
| | | | | | 505472.33 |
| 09-16-25 | 09-16-25 | LATE FEE ASSESSED | 141.74 | L/F ASSESS | |
| 09-01-25 | 00-00-00 | | | | |
| 00-00-00 | | | | | |
| | | | | | 505472.33 |
| 10-16-25 | 10-16-25 | LATE FEE ASSESSED | 141.74 | L/F ASSESS | |
| 10-01-25 | 00-00-00 | | | | |
| 00-00-00 | | | | | |
| | | | | | 505472.33 |
| 10-22-25 | 10-22-25 | ESCROW DISBURSEMENT | 10048.53 | ESCROW DISB | |
| 00-00-00 | 00-00-00 | | 30,072 | ESCROW NBR | |
| 00-00-00 | | | | | |
| 10-22-25 | | BOONE CO | | | |
| | | | | | 505472.33 |
| 10-28-25 | 10-28-25 | ESCROW DISBURSEMENT | 5234.55 | ESCROW DISB | |
| 00-00-00 | 00-00-00 | | 4,000 | ESCROW NBR | |
| 00-00-00 | | | | | |
| 10-28-25 | | STATE FARM INS | | | |
| | | | | | 505472.33 |
| 11-17-25 | 11-17-25 | LATE FEE ASSESSED | 141.74 | L/F ASSESS | |
| 11-01-25 | 00-00-00 | | | | |
| 00-00-00 | | | | | |
| | | | | | 505472.33 |
| 12-16-25 | 12-16-25 | LATE FEE ASSESSED | 141.74 | L/F ASSESS | |
| 12-01-25 | 00-00-00 | | | | |
| 00-00-00 | | | | | |
| | | | | | 505472.33 |
| 01-16-26 | 01-16-26 | LATE FEE ASSESSED | 141.74 | L/F ASSESS | |
| 01-01-26 | 00-00-00 | | | | |
| 00-00-00 | | | | | |
| | | | | | 505472.33 |
| 02-17-26 | 02-17-26 | LATE FEE ASSESSED | 141.74 | L/F ASSESS | |
| 02-01-26 | 00-00-00 | | | | |
| 00-00-00 | | | | | |
| | | | | | 505472.33 |
| 02-27-26 | 02-27-26 | LOAN FEE ASSESSED | 210.00 | FEE AMOUNT | |
| 00-00-00 | 00-00-00 | | | | |
| 00-00-00 | | | | | |
| 02-27-26 | | DESKTOP APPRAISAL FEE [redacted] | | | |
| | | | | | 505472.33 |
| 03-16-26 | 03-16-26 | LATE FEE ASSESSED | 141.74 | L/F ASSESS | |
| 03-01-26 | 00-00-00 | | | | |
| 00-00-00 | | | | | |
| | | | | | 505472.33 |
| 04-16-26 | 04-16-26 | LATE FEE ASSESSED | 141.74 | L/F ASSESS | |
| 04-01-26 | 00-00-00 | | | | |
| 00-00-00 | | | | | |

CENTRAL BANK & TRUST CO
CUSTOMER LOAN HISTORY



NOTE NBR [redacted]2861
SHORT NAME EHN TIMOTHY D

REQUEST DATE 9-17-2026

*--------------------HISTORY: 00-00-00 THRU 00-00-00 --------------------------*

| POST DTE / DUE DATE / REC DATE | EFF DATE / PAID-TO | TRANS DESCRIPTION | AMOUNT | TYPE | ACCT BALANCE |
| --- | --- | --- | --- | --- | --- |
| | | | | | 505472.33 |
| 05-18-26<br>05-01-26<br>00-00-00 | 05-18-26<br>00-00-00 | LATE FEE ASSESSED | 141.74 | L/F ASSESS | |
| | | | | | 505472.33 |
| 06-16-26<br>06-01-26<br>00-00-00 | 06-16-26<br>00-00-00 | LATE FEE ASSESSED | 141.74 | L/F ASSESS | |
| | | | | | 505472.33 |
| 07-16-26<br>07-01-26<br>00-00-00 | 07-16-26<br>00-00-00 | LATE FEE ASSESSED | 141.74 | L/F ASSESS | |
| | | | | | 505472.33 |
| 08-17-26<br>08-01-26<br>00-00-00 | 08-17-26<br>00-00-00 | LATE FEE ASSESSED | 141.74 | L/F ASSESS | |
| | | | | | 505472.33 |
| 09-16-26<br>09-01-26<br>00-00-00 | 09-16-26<br>00-00-00 | LATE FEE ASSESSED | 141.74 | L/F ASSESS | |

Central Bank & Trust Co.
Payoff for Timothy D. Ehn as of September 16, 2026

| | |
|---|---|
| Principal: | $505,472.33 |
| Interest: | $22,140.74 |
| Late Fees: | $1,842.62 |
| Loan Fees: | $256.00 |
| Escrow Advanced: | $4,064.68 |
| Attorneys' Fees and Costs: | $51,628.51 |
| **Total:** | $585,404.88 |

Pre-petition arrearage: $585,404.88

Interest continues to accrue on this claim and Central Bank & Trust Co. is entitled to recover its attorneys' fees, court costs and expenses.

NOT ORIGINAL DOCUMENT 06/25/2026 03:55:50 PM 89992

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
CIVIL BRANCH
CIVIL ACTION NO. 25-CI-02060

CENTRAL BANK & TRUST CO. PLAINTIFF

vs.

TIMOTHY D. EHN;
RACHEL ESTHER MAYERSON;
UNKNOWN SPOUSE OF TIMOTHY D. EHN;
TANYA THOMPSON-EHN;
UNKNOWN SPOUSE OF TANYA THOMPSON-EHN;
UNITED STATES OF AMERICA,
DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE;
UNITED STATES OF AMERICA, DEPARTMENT OF JUSTICE;
THE TRIPLE CROWN SUBDIVISION HOMEOWNERS' ASSOCIATION, INC. A/K/A TRIPLE CROWN HOMEOWNERS ASSOCIATION, INC. A/K/A TRIPLE CROWN SUBDIVISION;
COMMONWEALTH OF KENTUCKY, COUNTY OF BOONE; and
UNKNOWN TENANTS, IF ANY, OF 1182 CHESAPEAKE TRAIL, UNION, KENTUCKY

DEFENDANTS

# SUMMARY JUDGMENT

This matter having come before the Court upon the motion ("Motion")[1] of the Plaintiff, Central Bank & Trust Co. ("Central Bank"), for a Summary Judgment against the Defendant, Timothy D. Ehn, on the allegations contained in the Complaint, pursuant to Kentucky Rule of Civil Procedure 56.03 and

It appearing from the record that there is no genuine issue of material fact and that Central Bank is entitled to judgment against the Defendant, Timothy D. Ehn, as a matter of law, and

With the Court having reviewed the record and being fully advised,

[1] Terms not defined herein shall have the meanings given them in the Complaint of record herein.

NOT ORIGINAL DOCUMENT 06/25/2026 03:55:50 PM 89992

IT IS HEREBY ORDERED, DECREED, AND ADJUDGED, as follows:

1. Central Bank's Motion for a Summary Judgment against the Defendant, Timothy D. Ehn, is hereby GRANTED.

2. Central Bank is awarded a personal JUDGMENT against the Defendant, Timothy D. Ehn, in the amount of $526,287.25, comprised of principal in the amount of $505,472.33, interest in the amount of $15,218.58, escrow balance in the amount of $4,064.68, late fees in the amount of $1,275.66, and a release and other fees in the amount of $256.00, plus interest accruing on the principal portion thereof as provided for in the Note from April 30, 2026 until paid, plus accrued and accruing attorneys' fees, court costs and its expenses.

3. The Clerk of this Court shall mail a copy of this Summary Judgment to the Plaintiff, Defendants and all parties or their counsel of record.

4. This Judgment is final, there being no just cause for delay.

Dated this ____ day of ___________, 2026.

/s/ JUDGE RICHARD A. BRUEGGEMANN
electronically signed
5/19/2026 10:58:16 AM ET

JUDGE, BOONE CIRCUIT COURT

THIS JUDGMENT PREPARED BY:

DINSMORE & SHOHL LLP

/s/ Martin B. Tucker
Martin B. Tucker, Esq. (KBA #89992)
100 West Main Street, Suite 900
Lexington, Kentucky 40507
Tel: (859) 425-1000
Tel: (859) 425-1099
E-mail: martin.tucker@dinsmore.com
*Attorneys for Plaintiff,*
*Central Bank & Trust Co.*

JS : 000002 of 000003

NOT ORIGINAL DOCUMENT
06/25/2026 03:55:50 PM
89992

CLERK'S CERTIFICATION

I certify that a true copy of the foregoing has been mailed to the Plaintiff, Defendants, to all parties or counsel of record, at the following addresses, on this the ____ day of ______________, 2026:

Martin B. Tucker, Esq.
Dinsmore & Shohl LLP
100 West Main Street, Suite 900
Lexington, Kentucky 40507
*Attorneys for Plaintiff,*
*Central Bank & Trust Co.*

Jack Gatlin, Esq.
50 East Rivercenter Blvd., Suite 1275
Covington, Kentucky 41017
*Attorney for Defendant, Timothy D. Ehn*

Rachel Esther Mayerson
1182 Chesapeake Trail
Union, Kentucky 41091
*Defendant*

Heather Geis, Esq.
20 Burdsall Avenue
Ft. Mitchell, Kentucky 41017
*Warning Order Attorney for*
*Defendant, Unknown Spouse of Timothy D. Ehn*

Keith A. McMain, Esq.
6239 Kingsgate Drive
Burlington, Kentucky 41005
*Warning Order Attorney for*
*Defendant, Tanya Thompson-Ehn*

Michael J. Keeney, Esq.
7000 Houston Road, Suite 16
Florence, Kentucky 41042
*Warning Order Attorney for*
*Defendant, Unknown Spouse of Tanya Thompson-Ehn*

Kyle M. Melloan, Esq.
Assistant United States Attorney
260 West Vine Street, Suite 300
Lexington, Kentucky 40507
*Attorney for Defendants,*
*United States of America, Internal Revenue Service and*
*United States of America, Department of Justice*

Scott T. Gilbert, Esq
The Gilbert Firm, LLC
8135 Cabinet Circle
Cincinnati, Ohio 45244
*Attorney for Defendant,*
*Triple Crown Homeowner's Association, Inc.*

William G. Koebel, Esq.
Assistant Boone County Attorney
P.O. Box 83
Burlington, Kentucky 41005
*Attorney for Defendant,*
*Commonwealth of Kentucky, County of Boone*

Holly J. McCabe, Esq.
250E. 5th Street, 15th Floor
Cincinnati, Ohio 45202
*Warning Order Attorney for*
*Defendant, Unknown Occupants of 1182 Chesapeake Trail*

______________________________
CLERK, BOONE CIRCUIT COURT

JS : 000003 of 000003

# NOTICE OF THE BOONE COUNTY MASTER COMMISSIONER'S SALE

## DIVISION ONE

## BOONE CIRCUIT COURT CASE NO.: 25-CI-02060

CA8508DB-930C-4B4F-83B8-E619612AFB96 : 000001 of 000002

CENTRAL BANK & TRUST CO.

VERSUS}

TIMOTHY D. EHN, ET AL.

By virtue of a judgment and order of sale of the Boone Circuit Court rendered JULY 16, 2026 the above case, I shall proceed to offer for sale at the Justice Center Building in Burlington, Kentucky, to the highest bidder, at public auction on THURSDAY, SEPTEMBER 17, 2026 at the hour of 9:00 a.m. or thereabouts, the following described property to-wit:
ADDRESS: 1182 CHESAPEAKE TRAIL, UNION, KENTUCKY 41091
PVA PROPERTY IDENTIFICATION NUMBER: 064.18-07-052.00 & 064.18-07-052.01
AMOUNT OF JUDGMENT: $526,287.25
GROUP NO.: PARCEL 1 - 4794, PARCEL 2 - 2064
THE COMPLETE LEGAL DESCRIPTION IS PARTICULARLY SET OUT IN THE JUDGMENT AND ORDER OF SALE ENTERED IN THIS CASE.

TERMS OF SALE: The property shall be sold as a whole. The purchaser may pay all or part of the purchase price in cash, and may pay the balance of the purchase price on a credit of 30 days after date of sale; said credit shall be granted only upon the execution by the purchaser of bond, with surety thereon, and said surety shall be a lending institution authorized and doing business in Kentucky, or a reputable fidelity or surety company, authorized and doing business in Kentucky, and only if said surety be acceptable to the Commissioner of the Boone Circuit Court; and an authorized officer of the surety must be present at the sale or must have given the Commissioner adequate assurance of its intent to be surety prior to or at the sale; and said Bond shall be, and shall remain, a lien on the property sold as additional security for the payment of the full purchase price, and shall have the full force and effect of a Judgment; and said Bond shall bear interest at the rate provided by the Judgment up to Twelve (12%) Percent per annum until paid. The purchaser shall be required to pay the sum of 10% of the bid amount in cash or certified check on the purchase at the time of sale.

The successful bidder at the sale shall, at bidder's own expense, carry fire and extended insurance coverage on any improvements from the date of sale until the purchase price is fully paid, with a loss payable clause to the Commissioner of the Boone Circuit Court. Failure of the purchaser to effect such insurance shall not affect the validity of the sale or the purchaser's liability thereunder, but shall entitle, but not require, a lien holder herein, after giving notice to the Commissioner, to effect said insurance and furnish the policy or evidence thereof to the Commissioner, and the premium thereon or the proper portion thereof shall be charged to the purchaser as purchaser's cost.

The property shall be sold subject to ad valorem taxes for the year 2026 and all subsequent years thereafter; easements, restrictions and stipulations of record; assessments for public improvements levied against the property, if any; existing zoning ordinances, statutes, laws, or regulations; and any facts which an inspection and accurate survey of the property may disclose. BIDDERS SHALL BE PREPARED TO COMPLY WITH THESE TERMS.

All sales are "as is" and the Plaintiff, the Master Commissioner, and the Court shall not be deemed to have warranted title of the real estate to the purchaser.

FURTHER INFORMATION REGARDING THESE SALES AND OTHER UPCOMING SALES CAN BE FOUND AT www.boonecountyky.org (Partner Agencies to Master Commissioners) PROSPECTIVE BIDDERS ARE ADVISED AND ENCOURAGED TO REFER TO THAT WEBSITE FOR ANSWERS TO ANY QUESTIONS.

CERTIFICATE

The Commissioner of the Boone Circuit Court, does hereby certify that I have this date mailed a copy of this Notice to all the attorneys of record in the above-styled action.

Larry B. Dillon

LARRY B. DILLON, MASTER COMMISSIONER
CHRISTINA M. KENNEDY, DEPUTY MASTER COMMISSIONER
DATED: EFILED//MAILED: AUGUST 20, 2026

NSAL : 000001 of 000002

COPIES TO:

| | | |
|---|---|---|
| Hon. Martin B. Tucker | 100 West Main Street | Lexington, KY 40507 |
| Hon. Jack Gatlin | 50 East Rivercenter Blvd. | Covington, Kentucky 41017 |
| Rachel Esther Mayerson | 1182 Chesapeake Trail | Union, Kentucky 41091 |
| Hon. Heather Geis | 20 Burdsall Avenue | Ft. Mitchell, Kentucky 41017 |
| Hon. Keith A. McMain | 6239 Kingsgate Drive | Burlington, Kentucky 41005 |
| Hon. Michael J. Keeney | 7000 Houston Road | Florence, Kentucky 41042 |
| Hon. Kyle M. Melloan | 260 West Vine Street | Lexington, Kentucky 40507 |
| Hon. Scott T. Gilbert | 8135 Cabinet Circle | Cincinnati, Ohio 45244 |
| Hon. William G. Koebel | P.O. Box 83 | Burlington, Kentucky 41005 |
| Hon. Holly J. McCabe | 250 East 5th Street | Cincinnati, Ohio 45202 |

CA8508DB-930C-4B4F-83B8-E619612AFB96 : 000002 of 000002

NSAL : 000002 of 000002

# NOTE

LOAN# [redacted]5634
PMI CASE#
November 4th, 2016 Cincinnatti , OHIO
[Date] [City] [State]

1182 CHESAPEAKE TRAIL UNION, KY 41091

[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 621,600.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Central Bank & Trust Co., KENTUCKY CORPORATION .

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.625 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on January 1st , 2017 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on December 1st, 2046 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 300 W. Vine St., Fayette, Lexington, KY 40507 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 2,834.81 .

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note, is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

[signature] (Seal)
TIMOTHY D EHN -Borrower

[signature] (Seal)
TANYA THOMPSON-EHN -Borrower

_______________________ (Seal)
-Borrower

_______________________ (Seal)
-Borrower

NMLSR ID: 440304
NMLSR (L.O.) ID: 1160947 (Larry Luebbers)
Loan Originator: Central Bank & Trust Co.

*[Sign Original Only]*

RETURN TO:

After Recording Return To:
Queen City Title Agency, Inc.
250 East Fifth Street, Ste. 2200
Cincinnati, Ohio 45202

________________ **[Space Above This Line For Recording Data]** ________________

# MORTGAGE

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated November 4, 2016, together with all Riders to this document.
**(B) "Borrower"** is Timothy D. Ehn and Tanya Thompson-Ehn, husband and wife. Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is Central Bank & Trust Co. Lender is a corporation organized and existing under the laws of the State of Kentucky. Lender's mailing address is 300 West Vine Street, Lexington, Kentucky 40507, and the address of Lender's principal place of business is 300 West Vine Street, Lexington, Fayette County Kentucky 40507. Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated November 4, 2016. The Note states that Borrower owes Lender Six Hundred Twenty One Thousand Six Hundred and no/100 Dollars (U.S. $621,600.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than December 1, 2046. This Security Instrument secures 150% of the principal amount of the Note, but any amount secured in excess of the amount stated in the second sentence of this paragraph must be a "Protective Advance" as defined by Section 26 hereof (or, if the rate of interest is adjustable, may be interest added to principal, commonly called "negative amortization").
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.



Boone County
M3983 PG 842

**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ Other(s) [specify] __________ |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY: This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the County of Kenton, Commonwealth of Kentucky:

See Exhibit A attached hereto and incorporated by reference herein.

which currently has the address of 1182 Chesapeake Trail
[Street]
Union, Kentucky 41091 ("Property Address"):
[City] [Zip Code]

Being the same property conveyed to Borrower by deed dated __________, of record in Deed Book D1080, page 759, Kenton County Clerk's office.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:



Boone County
M3983 PG 844

ℬ ℸ

(a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in



-6 ~~K~~

Boone County
M3983 PG 845

accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by



**Boone County**
**M3983 PG 846**

RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser

coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.



*6 T*

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste

on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



[initials]

Boone County
M3983 PG 849

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security

Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or

when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender



6 8

may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements



Boone County
M3983 PG 855

of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides**



**Boone County**
**M3983 PG 856**

**otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**25. Taxes and Assessments on Mortgage Insurance Premiums.** If mortgage insurance premiums are required to be paid by Borrower pursuant to Section 10, then in addition to such premiums, Borrower shall pay all taxes and assessments thereon for so long as Borrower is required by Lender to pay the premiums. All taxes and assessments on premiums due and payable by Borrower shall be considered an Escrow Item and shall be paid by Borrower to Lender in the manner provided for Escrow Items in Section 3.

**26. Protective Advances.** This Security Instrument secures not only the initial advance under the Note, but also all Protective Advances. "Protective Advances" mean any advances to maintain and protect the Property and/or protect Lender's rights in the Property made by Lender or by any successors or assigns of Lender, including, without limitation, any sums, with interest, advanced under Sections 5, 9, or 14 hereof: (a) to pay any Escrow Items; (b) to pay any sums secured by a lien or encumbrance on the Property without which payment the secured position of Lender, including the priority of this Security Instrument, or any successor or assign of Lender might be jeopardized; (c) to secure, repair, maintain, protect or preserve the Property, or Lender's interest in the Property and rights under this Security Instrument; or (d) to pay any and all expenses incident to the collection of the indebtedness secured by this Security Instrument and the foreclosure thereof by judicial proceedings, or otherwise, pursuant to Applicable Law, whether the Property is still owned by the Borrower or is owned by a Successor in Interest of Borrower.

To the extent that any Protective Advances are deemed to be "future advances" or "additional indebtedness" within the meaning of KRS 382.520, this Security Instrument secures such future advances or additional indebtedness, provided that the total indebtedness at any one time outstanding shall not exceed 150% of the original principal amount of the Note, with



Boone County
M3983 PG 857

interest thereon, and whether or not evidenced by notes, accounts or obligations of any kind whatsoever. It shall be a default under this Security Instrument if Borrower requests a release, in the manner provided by KRS 382.520, of any portion of the lien securing any of the additional indebtedness secured by this Security Instrument pursuant to KRS 382.520 prior to the date that all of the obligations secured by this Security Instrument have been paid and discharged and the Note and this Security Instrument have been terminated, and Borrower hereby waives any and all right to request such a release to the maximum extent permitted by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_________________________________(Seal)
Timothy D. Ehn - Borrower

_________________________________(Seal)
Tanya Thompson-Ehn - Borrower



Boone County
M3983 PG 858

**[Space Below This Line for Acknowledgment]**

COMMONWEALTH OF KENTUCKY )
)SS
COUNTY OF BOONE )

This foregoing instrument was acknowledged before me this 4th day of November, 2016 by Timothy D. Ehn and Tanya Thompson-Ehn, husband and wife.

NOTARY PUBLIC
Commonwealth of Kentucky/State-at-Large
My commission expires:

SEAL

Jessica Noe
Notary Public, ID No. 558743
State at Large, Kentucky
My Commission Expires on May 9, 2020

Loan origination organization: Central Bank & Trust Co. NMLS ID: 440304
Loan originator: Larry Luebbers NMLS ID: 1160947

This instrument was prepared by:

Michael G. Reed, Attorney at Law
Porter, Wright, Morris & Arthur LLP
250 East Fifth Street, Suite 2200
Cincinnati, Ohio 45202
(513) 381-4700



Boone County
M3983 PG 859

## Exhibit A

Parcel 1
PIDN: 064.18-07-052.00
Group No.: 4794

Being all of Lot Fifty-two (52), Section 18, Block "G", Triple Crown Country Club, as shown on Plat recorded in Plat Cabinet 5, Slide 278 of the Boone County Clerk's records at Burlington, Kentucky.

Parcel 2
PIDN: 064.18-07-052.01
Group No.: 2064

Beginning at an iron pin (set) at the east corner of Lot No. Fifty-two (52) of Section No. 18, Block "G" of Triple Crown Country Club, said pin also being the common rear corner of Lot Nos. Thirty-four (34) and Thirty-five (35) of Section No. 17, Block "D" of Triple Crown Country Club; thence along the south line of said Lot No. Fifty-two (52) of Section No. 18, Block "G" of Triple Crown Country Club, S 45° 24' 32" W 295.99 feet to an iron pin (set) at the common rear corner between Lot Nos. Twenty-six (26) and Twenty-seven (27) of Section No. 18, Block "B" of Triple Crown Country Club; thence S 72° 57' 46" E along the north line of Lot No. Twenty-seven (27) of Section No. 18, Block "B" of Triple Crown Country Club 106.34 feet to an iron pin (set) at the northeast corner of said Lot No. Twenty-seven (27); thence through the lands of the grantor S 88° 16' 22" E 77.63 feet to an iron pin (set), S 76° 27' 46" E 120.00 feet to an iron pin (set) and N 27° 46' 07" E 133.74 feet to an iron pin (set) at the common rear corner between Lot Nos. Thirty-three (33) and Thirty-four (34) of Section No. 17, Block "D" of Triple Crown Country Club; thence along the south line of Lot No. Thirty-four (34) of Section No. 17, Block "D" of Triple Crown Country Club N 54° 43' 39" W 130.94 feet to an iron pin (set) and N 28° 15' 55" W 85.65 feet to the place of beginning. Containing 1.1179 acres.

Being the same premises conveyed to Gurdan Pooni and Mariaglen Pooni, husband and wife, by virtue of a Deed dated July 28, 2015 and recorded July 30, 2015 in Deed Book D1057, page 138, Boone County, Kentucky Records



**Boone County**
**M3983 PG 860**

# PLANNED UNIT DEVELOPMENT RIDER

LOAN# [redacted] 5634

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 4th day of November , 2016 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

Central Bank & Trust Co., KENTUCKY CORPORATION

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

1182 CHESAPEAKE TRAIL UNION, KY 41091

*[Property Address]*

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

Protective covenants, conditions, and restrictions of said developments.

(the "Declaration"). The Property is part of a planned unit development known as

TRIPLE CROWN

*[Name of Planned Unit Development]*

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts



Boone County
M3983 PG 861

(including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. **Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.



Boone County
M3983 PG 862

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_______________ (Seal)
TIMOTHY D EHN -Borrower

_______________ (Seal)
TANYA THOMPSON-EHN -Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower



DOCUMENT NO: 714480
RECORDED ON: NOVEMBER 14,2016 10:54:37AM
TOTAL FEES: $74.00
GROUP : 4794
COUNTY CLERK: KENNY BROWN
COUNTY: BOONE COUNTY CLERK
DEPUTY CLERK: CINDY
BOOK M3983 PAGES 842 - 863

Boone County
M3983 PG 863